### Eby v. Milton S. Hershey Medical Center (No. 2)

C.P. of Dauphin County, no. 4977 S 1992.

*Gregory R. Reed,* for plaintiff.

*April L. Chamberlain,* for defendant Milton Hershey Medical Center.

*William M. Corley,* and *Steven D. Snyder,* for Clintec Nutrition Co.

HOOVER, *J.*, March 14, 1996—This matter is presently before the court on defendant The Milton S. Hershey Medical Center's motion for partial summary judgment. This is a medical malpractice action. In their complaint, plaintiffs allege negligence and strict liability against The Milton S. Hershey Medical Center. Medical Center argues that pursuant to our Supreme Court's decision in *Cafazzo v. Central Medical Health Services Inc.*, 542 Pa. 526, 668 A.2d 521 (1995), the strict liability claims contained in Counts II and III of the complaint should be dismissed. The relevant facts are summarized as follows:

The minor plaintiff, Joseph Eby, was admitted to Medical Center on May 15, 1992, with an admission diagnosis of failure to thrive, chronic diarrhea, developmental delay and mild dysmorphic features. Throughout the course of his admission, Joseph was nutritionally maintained on hyperalimentation solution. The hyperalimentation solutions administered to Joseph were prescribed by a physician and compounded by a pharmacist from Medical Center's on-site pharmacy. The elements prescribed in the physician's order for the child's hyperalimentation solution included sterile water, dextrose, trophamine, electrolytes, sodium, potassium, magnesium, calcium, phosphorus, chloride and acetate. On May 26, 1992, Joseph Eby was administered a hyperalimentation solution compounded in Medical Center's pharmacy using automated compounders manufactured by the additional defendants. Approximately 10 hours later, he suffered a cardiopulmonary arrest but was successfully resuscitated. Plaintiffs allege that the cardiopulmonary arrest was caused by electrolyte and metabolic imbalances secondary to an improper

hyperalimentation solution. Among the allegations against Medical Center, plaintiffs allege strict liability based on the fact that Medical Center made, sold and distributed an unreasonably unsafe product and that the hyperalimentation solution caused injury to the minor plaintiff.

This medical malpractice action was commenced by a complaint which asserts both negligence and strict liability claims against Medical Center. Defendant Medical Center filed a complaint to join Baxter Healthcare Corporation and Clintec Nutrition Company as additional defendants.

Medical Center does not dispute that it prepared the hyperalimentation solution administered to Joseph Eby, that the solution contained excessive concentrations of electrolytes and that Joseph Eby suffered a cardiopulmonary arrest as a result. Medical Center does dispute that it is subject to strict liability. Medical Center states that the entry of partial summary judgment on the strict liability counts is appropriate because Pennsylvania law does not recognize an action in strict liability against a hospital under the circumstances of this case.

In resolving the instant motion for partial summary judgment, we are guided by the Supreme Court's recent decision in *Cafazzo, supra.* In this case of first impression, the court was presented with the question of whether a hospital and a physician can be held subject to strict liability under the Restatement (Second) of Torts §402A for defects in a product incidental to the provision of medical services. In 1986, Mr. Cafazzo underwent surgery for implantation of a mandibular prosthesis. In 1992, it was discovered that this device

was defective. A complaint was filed against the physician who performed the surgery and the hospital where the operation took place claiming that all defendants sell, provide, or use certain prosthetic devices and that they should be held strictly liable as having provided, sold or otherwise placed in the stream of commerce products manufactured by Vitek Inc.

The court looked to the Restatement (Second) of Torts §402A which reads as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if:

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the consumer without substantial change in the condition in which it is sold."

The court reviewed the policy behind strict liability which is "to insure that the costs of injuries resulting from defective products are borne by the manufacturers who put such products on the market rather than by the injured persons who are powerless to help themselves." *Id.* at 531, 668 A.2d at 524. The court concluded that the provision of medical services is qualitatively different from the sale of products since the primary activity involved is the provision of medical services. The use of the product is incidental to this provision of medical services. The court concluded that hospitals are not sellers, providers, suppliers or distributors of products so as to activate section 402A. The court further

stated that even if medical providers could be considered to be sellers, the policy reasons behind strict liability are not present.

The plaintiffs attempt to distinguish the instant case and the defective hyperalimentation solution from the facts in *Cafazzo* which involved a mandibular implant. Plaintiffs state that in *Cafazzo,* the implant was not the type of material or tool over which the hospital had control since it did not create, compound or manufacture this tool. In the instant case, the hospital was the sole manufacturer of the solution. Plaintiffs state that in the *Cafazzo* case and in the cases cited by the Supreme Court, there was a manufacturer or distributor which was subject to strict liability aside from the hospital. Furthermore, plaintiffs claim that it is obvious that the hospital in the *Cafazzo* case was not in the business of selling the product which was defective. Plaintiffs claim that in this case, the hospital was engaged in the business of selling the solution and that there is no other manufacturer or distributor to go after so as to satisfy the policy reasons behind strict liability.

Plaintiffs further suggest that the Supreme Court did not state that in all cases, a cause of action for strict liability cannot be asserted against medical providers. Plaintiffs state that the court established an exception that if the medical facility provided mechanical or administrative materials as opposed to services and products associated with diagnosis and treatment, a cause of action for strict liability could be maintained. It was suggested by the plaintiffs that the hyperalimentation solution was simply food and that the hospital should be held strictly liable for the provision of bad food. We have studied the *Cafazzo* opinion again and are

not convinced that such an exception was carved out by the Supreme Court. Nevertheless, even if the provision of mechanical or administrative materials by a medical provider could subject the provider to a claim for strict liability, the hyperalimentation solution in this case was hardly just food or nourishment for this child. This was part of the medical treatment derived from a prescription very specific in its components written by the attending physician who ordered this mixture. It was not simply food supplied by the hospital as part of the meal plan. We find that the hyperalimentation solution administered to Joseph Eby was the treatment rendered by the hospital and that is was critical to the provision of medical services which is Medical Center's primary activity. Therefore, in accordance with the *Cafazzo* decision, we find that a cause of action for strict liability cannot be asserted against the Medical Center, that the entry of partial summary judgment is appropriate and accordingly, we enter the following:

## ORDER

And now March 14, 1996, the motion for partial summary judgment filed on behalf of The Milton S. Hershey Medical Center is hereby granted and the strict liability claims contained in Counts II and III are dismissed.